**RECORD NO. 17-1073(L)**
**CROSS APPEAL NO. 17-1117**

## IN THE

# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

### ANASTASIA V. WOOTTEN,

*Plaintiff-Appellee/Cross-Appellant,*

V.

### COMMONWEALTH OF VIRGINIA DEPARTMENT OF MOTOR VEHICLES, *et al.,*

*Defendants-Appellants/Cross-Appellees,*

AND

### DAVID MITCHELL, Deputy Commissioner of the Department of Motor Vehicles of the Commonwealth of Virginia, *et al.,*

*Defendants*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
AT LYNCHBURG

**OPPENING BRIEF OF APPELLANTS/CROSS APPELLEES**

Sydney Edmund Rab
Ryan Spreague Hardy
OFFICE OF THE ATTORNEY
 GENERAL OF VIRGINIA
202 North 9th Street
Richmond, VA 23219
804-786-2071
srab@oag.state.va.us
rhardy@oag.state.va.us

*Counsel for Appellants/Cross Appellees*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __17-1073__    Caption: _Anastasia V. Wootten v. Commonwealth of Virginia_____

Pursuant to FRAP 26.1 and Local Rule 26.1,

_Richard D. Holcomb_____
(name of party/amicus)

_____

 who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.      Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.      Does party/amicus have any parent corporations?                    ☐ YES ☑ NO
        If yes, identify all parent corporations, including all generations of parent corporations:

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
        other publicly held entity?                                ☐ YES ☑ NO
        If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(a)(2)(B))? ☐YES ☑NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question) ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding? ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: /s  Sydney E. Rab                     Date: _____1/30/17_____

Counsel for: All Appellants/Defendants

## CERTIFICATE OF SERVICE
**************************
I certify that on _____1/30/17_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s Sydney E. Rab                                          1/30/17
       (signature)                                            (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __17-1073__    Caption: _Anastasia V. Wootten v. Commonwealth of Virginia_____

Pursuant to FRAP 26.1 and Local Rule 26.1,

_Jeannie Thorpe_____
(name of party/amicus)

_____

 who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.      Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO

2.      Does party/amicus have any parent corporations?                    ☐ YES ☑ NO
        If yes, identify all parent corporations, including all generations of parent corporations:

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
        other publicly held entity?                            ☐ YES ☑ NO
        If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(a)(2)(B))? ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question) ☐ YES ☑ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding? ☐ YES ☑ NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: /s Sydney E. Rab _____    Date: ____1/30/17____

Counsel for: All Appellants/Defendants _____

## CERTIFICATE OF SERVICE
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

I certify that on ____1/30/17____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s Sydney E. Rab _____                    ____1/30/17____
        (signature)                                                (date)

- 2 -

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __17-1073__     Caption: _Anastasia V. Wootten v. Commonwealth of Virginia_____

Pursuant to FRAP 26.1 and Local Rule 26.1,

_Joseph Hill_____
(name of party/amicus)

_____

 who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.   Is party/amicus a publicly held corporation or other publicly held entity?   ☐YES ☑NO

2.   Does party/amicus have any parent corporations?                    ☐YES ☑NO
     If yes, identify all parent corporations, including all generations of parent corporations:

3.   Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                              ☐YES ☑NO
     If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(a)(2)(B))? ☐YES ☑NO
If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: /s  Sydney E. Rab                              Date:            1/30/17

Counsel for: All Appellants/Defendants

## CERTIFICATE OF SERVICE
****************************

I certify that on _____1/30/17_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s Sydney E. Rab                                                        1/30/17
         (signature)                                                          (date)

- 2 -

# TABLE OF CONTENTS

Page

CORPORATE DISCLOSURES

TABLE OF AUTHORITIES ................................................................... iii

JURISDICTIONAL STATEMENT ........................................................ 1

INTRODUCTION ................................................................................. 1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ...................... 2

STATEMENT OF THE CASE ............................................................... 3

STATEMENT OF FACTS ..................................................................... 4

    A.   Wootten is suspended and terminated by DMV. ................... 5

    B.   The VGP was available to Wootten to grieve her termination. .................................................................................. 6

    C.   Wootten refuses to pursue the VGP process and instead attempts to grieve her termination under the LEOPGA. ....... 8

SUMMARY OF ARGUMENT ............................................................... 10

STANDARD OF REVIEW .................................................................... 12

ARGUMENT ........................................................................................ 13

I.   The District Court erred in holding that the VGP was not available to Wootten. ........................................................................ 13

    A.   Due process requires only that Wootten have an opportunity to challenge her termination. ............................ 13

    B.   The District Court erred by failing to consider Wootten's multiple opportunities to use the VGP, with which Appellants did not interfere. ............................................. 15

II.   It was not clearly established that refusing to give Wootten the process of her choice when an alternative process was offered would violate her procedural due process rights. ......................... 17

i

A.  The District Court failed to identify the right at issue with the requisite level of specificity. ........................................................19

B.  It was not clearly established that Wootten adequately availed herself of all available process when she refused to pursue a grievance hearing under the VGP........................................21

    1.  Reasonable officials in the Appellants' position would not have known that they would violate the U.S. Constitution by offering a post-termination hearing under one of two available state processes. .................21

    2.  The District Court's legal conclusion that the VGP was unavailable conflicts with the clearly established principle that federal due process is not defined by state law standards. ..................................................................24

    3.  No Virginia case has held that election of one Virginia grievance statute automatically forecloses the availability of the other statute............................................26

III.  The District Court erred by viewing the evidence in the light most favorable to Wootten when granting Wootten's motion for summary judgment ........................................................................28

A.  Legal framework for cross-motions for summary judgment. .............28

B.  Alternative Theories Advanced............................................................31

C.  District Court's application of the facts to Wootten's legal theory....................................................................................................32

CONCLUSION ...................................................................................................34

STATEMENT REGARDING ORAL ARGUMENT .............................................34

CERTIFICATE OF COMPLIANCE.....................................................................35

CERTIFICATE OF SERVICE .............................................................................35

# TABLE OF AUTHORITIES

Page

**Cases**

*Altman v. City of High Point*,
330 F.3d 194 (4th Cir. 2003) ...............................................................12

*Alvin v. Suzuki*,
227 F.3d 107 (3d Cir. 2000) ........................................................ 14, 23

*Amer. Fid. & Cas. Co. v. London & Edinburgh Ins. Co.*,
354 F.2d 214 (4th Cir. 1965) ...............................................................31

*Anderson v. Creighton*,
483 U.S. 635 (1987)................................................................... 18, 19

*Ashcroft v. Al-Kidd*,
563 U.S. 731 (2011)............................................................ 18, 19, 26

*Ashley v. NLRB*,
255 F. App'x 707 (4th Cir. 2007) ............................................... 14, 20

*Bacon v. City of Richmond*,
475 F.3d 633 (4th Cir. 2007) ...............................................................29

*Bishop v. City of Suffolk*,
No. 95-2000, 1996 U.S. App. LEXIS 13137 (4th Cir. May 29, 1996) ..............23

*Brickey v. Hall*,
828 F.3d 298 (4th Cir. 2016) ...................................................... 12, 17

*Charbonnages de France v. Smith*,
597 F.2d 406 (4th Cir. 1979) ...............................................................29

*Cleveland Bd. of Educ. v. Loudermill*,
470 U.S. 532 (1985)........................................................................20

*Cloaninger v. McDevitt*,
555 F.3d 324 (4th Cir. 2009) .................................................................5

*Columbia Union Coll. v. Clarke*,
159 F.3d 151 (4th Cir. 1998) ...............................................................31

iii

*Defenders of Wildlife v. N.C. DOT*,
   762 F.3d 374 (4th Cir. 2014) ...............................................................29

*Fields v. Durham*,
   909 F.2d 94 (4th Cir. 1990) .................................................................24

*Gilbert v. Homar*,
   520 U.S. 924, 929 (1997)......................................................................20

*Gray v. Laws*,
   51 F.3d 426 (4th Cir. 1995) ......................................................... 14, 24

*Hanton v. Gilbert*,
   36 F.3d 4 (4th Cir. 1994) .....................................................................16

*Haskins v. Baylis*,
   440 F. Supp. 2d 455 (D. Md. 2006)......................................................30

*Iota Xi Chapter of Sigma Chi Fraternity v. Patterson*,
   566 F.3d 138 (4th Cir. 2009) ...............................................................13

*ITCO Corp. v. Michelin Tire Corp., Commercial Div.*,
   722 F.2d 42 (4th Cir. 1983) .......................................................... 29, 30

*Krentz v. Robertson Fire Prot. Dist.*,
   228 F.3d 897 (8th Cir. 2000) ...............................................................23

*Mitchell v. Forsyth*,
   472 U.S. 511 (1985)........................................................................ 5, 12

*Morrison v. Nissan Motor Co.*,
   601 F.2d 139 (4th Cir.1979) ................................................................29

*Mullenix v. Luna*,
   136 S. Ct. 305 (2015).......................................................... 17, 18, 19

*Nafco Oil & Gas, Inc. v. Appleman*,
   380 F.2d 323 (10th Cir. 1967) .............................................................30

*Nwolise v. INS*,
   4 F.3d 306 (4th Cir. 1993) ...................................................................12

iv

*Occupy Columbia v. Haley*,
    738 F.3d 107 (4th Cir. 2013) ...............................................................26

*Pearson v. Callahan*,
    555 U.S. 223 (2009).................................................................. 12, 17, 18

*Reichle v. Howards*,
    566 U.S. 658 (2012)...............................................................................17

*Riccio v. Cty. of Fairfax*,
    907 F.2d 1459 (4th Cir. 1990) ...................................................... 24, 26

*Rossignol v. Voorhaar*,
    316 F.3d 516 (4th Cir. 2003) .................................................................29

*Saucier v. Katz*,
    533 U.S. 194 (2001)...............................................................................18

*Scott v. Harris*,
    550 U.S. 372 (2007)...................................................................... 4, 5, 12

*Smith v. Gilchrist*,
    749 F.3d 302 (4th Cir. 2014) ....................................................... 17, 26

*Stone v. Univ. of Md. Med. Sys. Corp.*,
    855 F.2d 167 (4th Cir. 1988) ...............................................................13

*Towne Mgmt. Corp. v. Hartford Accident & Indem. Co.*,
    627 F. Supp. 170 (D. Md. 1985)..........................................................30

*Tri-County Paving, Inc. v. Ashe Cty.*,
    281 F.3d 430 (4th Cir. 2002) ...............................................................14

*Walker v. Mod-U-Kraf Homes, LLC*,
    775 F.3d 202 (4th Cir. 2014) ...............................................................29

*White v. Pauly*,
    137 S. Ct. 548 (2017)................................................................... 18, 27

*Wilson v. Layne*,
    526 U.S. 603 (1999)...............................................................................19

*Zinermon v. Burch*,
    494 U.S. 113 (1990)........................................................... 14, 19

**Statutes**

18 U.S.C. § 2721, *et seq*..........................................................4

28 U.S.C. § 1291 ...................................................................1

28 U.S.C. § 1331 (2015) ...........................................................1

42 U.S.C. § 1981 ...................................................................4

42 U.S.C. § 1983 ..................................................................17

Va. Code Ann. § 2.2-3000 *et seq.* ...............................................1

Va. Code Ann. § 2.2-3002(3)......................................................27

Va. Code Ann. § 2.2-3006 .........................................................7

Va. Code Ann. § 9.1-500 *et seq.*................................................1

Va. Code Ann. § 9.1-502(B) ................................................ 9, 27, 32

Va. Code Ann. § 9.1-504 ..........................................................8

Va. Code Ann. § 9.1-504(A).......................................................6

**Other Authorities**

Wright, Miller & Kane, *Federal Practice and Procedure*:
    Civil 2d § 2720.................................................................30

**Rules**

Fed. R. Civ. P. 56 ........................................................... 3, 29

**Constitutional Provisions**

U.S. Const. amend. V.......................................................... 1, 19

U.S. Const. amend. XIV ................................................... passim

## JURISDICTIONAL STATEMENT

The United States District Court had federal-question jurisdiction for the Amended Complaint, which allege, inter alia, a violation of procedural due process rights under the Fifth and Fourteenth Amendments of the United States Constitution and a claim of supervisory liability for the alleged violation of the Plaintiff's constitutional due process rights. *See* 28 U.S.C. § 1331 (2015).

Appellants timely filed a notice of appeal of the District Court's January 13, 2017 final order to this Court on January 17, 2017. (J.A. 1148.) This Court has jurisdiction under 28 U.S.C. § 1291.

## INTRODUCTION

Anastasia V. Wootten, a former law enforcement officer with the Virginia Department of Motor Vehicles, sued DMV and several DMV officials, claiming, inter alia, that she was denied due process when she was not afforded a post-termination grievance hearing under the Law-Enforcement Officers Procedural Guarantees Act ("LEOPGA"), Va. Code Ann. § 9.1-500 *et seq*. DMV terminated had Wootten's employment for multiple incidents of misconduct stemming from the arrest and criminal investigation of a civilian coworker.

Appellants challenged Wootten's due process claim on the bases that Wootten had refused to avail herself of constitutionally adequate process under the Virginia State Grievance Procedure ("VGP"), Va. Code Ann. § 2.2-3000 *et seq.*,

1

and that it was not clearly established that Wooten had a federal due process right to insist on pursuing her preferred grievance process instead of another available process. In granting Wooten summary judgment, the District Court erroneously concluded that the VGP was foreclosed to Wooten as a matter of Virginia law, so that Appellants' refusal to provide an LEOPGA hearing denied Wooten the only process available.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

I.      Under the Fourteenth Amendment, the only post-termination process owed to a state employee is an opportunity to respond to the charges against her. Wooten was given multiple opportunities over a span of thirteen months to pursue a constitutionally-adequate post-termination hearing under the VGP. Did the District Court err in concluding that the VGP was unavailable as a matter of Virginia law despite the multiple invitations Wooten was given to use the process by the Virginia Office of Employment Dispute Resolution ("EDR") and Appellants?

II.     Qualified immunity protects official from liability for damages unless a prior case addressing the particular issue exists to guide public officials such that a reasonable official would know their conduct violates a statutory or constitutional right. In 2013, no case from the Supreme Court of the United Stated, Court of Appeals of the Fourth Circuit, or the Supreme Court of Virginia had held that a

grievant had a federal due process right to select a particular grievance procedure so long as some constitutionally-adequate procedure is offered. Was it clearly established that, if Appellants refused to provide Wooten a post-termination hearing under one Virginia statute, they violated her procedural due process rights when they reasonably believed an alternative process was available to Wooten under a different Virginia statute?

III.    Cross motions for summary judgment require the District Court to review each motion separately on its own merits under Federal Rule of Civil Procedure 56 to determine whether either of the parties deserves judgment as a matter of law. Did the District Court erroneously consider evidence in the light most favorable to Wooten to support granting Wooten's motion for summary judgment on her due process claim?

## STATEMENT OF THE CASE

Wooten filed her Complaint on April 24, 2014 against the three individual Defendants, Richard Holcomb, Joseph Hill, and Jeannie Thorpe, alleging, inter alia, that after termination of her employment as a Senior Special Agent at the DMV, Defendants denied her a due process hearing in violation of her procedural due process rights.[1] She further alleged supervisory liability for such actions.

---

[1] Wooten's original Complaint contained the following counts: Count I – Title VII gender discrimination and harassment; Count II – Title VII national origin

3

On January 7, 2016, the District Court granted Plaintiff's Motion for Partial Summary Judgment, holding that Holcomb, Hill, and Thorpe denied Wootten due process by refusing to honor her request for a grievance hearing under the LEOPGA. In addition, the District Court denied Appellants' claim that they were entitled to qualified immunity. A jury on October 19, 2016 decided that Appellants would not have successfully terminated Wootten on the facts presented had she been afforded the hearing sought and awarded her back pay. Thereafter on December 30, 2016, the District Court denied Wootten's equitable request for reinstatement but added two and one-half years of front pay to the jury award.

A Final Judgment Order was entered on January 13, 2017 that requires Appellants to pay Wootten the sum of $384,068.15, with interest. Costs were taxed in the amount of $10,707.44. Appellants noted their appeal January 17, 2017.

## STATEMENT OF FACTS

"The first step in assessing the constitutionality of [Appellants'] actions is to determine the relevant facts." *Scott v. Harris*, 550 U.S. 372, 378 (2007). "In qualified immunity cases, this usually means adopting . . . the plaintiff's version of

---

discrimination and harassment; Count III – Title VII retaliation; Count IV – First Amendment retaliation; Count V – procedural due process; Count VI – supervisory liability for constitutional violations; Count VII – racial discrimination under 42 U.S.C. § 1981; and Count VIII – Driver's Privacy and Protection Act, 18 U.S.C. § 2721, *et seq.* Counts I, II, III, IV, VII, and VIII were dismissed via motion to dismiss and motions for summary judgment.

the facts." *Id.* Ordinarily, the Court is not required to resolve factual disputes because the analysis of a qualified immunity claim "is a purely legal one: whether the facts alleged (by the plaintiff, or, in some cases, the defendant) support a claim of violation of clearly established law." *Cloaninger v. McDevitt*, 555 F.3d 324, 331 (4th Cir. 2009) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 528 n.9 (1985)).

### A.    Wootten is suspended and terminated by DMV.

Wootten worked for the DMV Law Enforcement Services as a Senior Special Agent in the Lynchburg office of the Appomattox District for approximately two years until April 5, 2013. Wootten had a minor altercation with a co-worker, Jennifer Dawson, in the bathroom of the Lynchburg office on September 13, 2012. Despite knowing that Appellants intended to look into the matter from DMV Headquarters, Wootten initiated criminal charges against Dawson for assault the next day. Dawson was arrested on the evening of Friday, September 14, 2012, which the District Court observed was intentionally designed to force Dawson to "stay in jail over the weekend." (J.A. 1129-30.)

On March 6, 2013, Hill, the Assistant Commissioner for the Office Enforcement and Compliance, issued to Wootten a four-page Allegation Letter outlining her misconduct. (J.A. 107.) This letter warned Wootten that discipline "up to and including termination could result." (*Id*.) Hill advised Wootten:

5

> You will continue on pre-disciplinary leave until a determination is made in this matter. . . . Please provide your written response to me not later than 5:00 p.m. on March 13, 2013. Your response should specify whether you are electing to proceed under the [VGP] or the [LEOPGA]. . . . After it is received, your response will be reviewed and an appropriate disciplinary action will be considered.

(J.A. 109-10).

Wooten, by counsel, responded to Hill's Allegation Letter and sought to explain her actions. (J.A. 111.) The response's penultimate paragraph includes the critical decision: "My client wishes to pursue this matter under the [VGP]." (J.A. 113.) Rejecting Wooten's explanations, DMV issued two Written Notices of discipline on April 5, 2013. (J.A. 101-06.) Each offense warranted termination.

## B.    The VGP was available to Wooten to grieve her termination.

As a non-probationary law enforcement officer, Wooten had two means of grieving a suspension or termination. Wooten could proceed under the VGP, a process managed by EDR. (J.A. 198.) Alternatively, Wooten could proceed under the LEOPGA, which is managed internally by DMV. Va. Code Ann. § 9.1-504(A).

Rather than commence a grievance of her termination, on April 17, 2013, Wooten (along with colleagues Robert Supinger and David Stultz) filed a Petition in the Richmond Circuit Court against Attorney General Kenneth T. Cuccinelli, II, challenging the legality of the Attorney General's appointment of outside counsel

to represent DMV in all grievance matters related to the disciplinary charges against Wooten, Stultz and Supinger. (J.A. 116-17.) This Petition sought to prevent counsel from representing DMV "in administrative hearings relating to the petitioner's suspension and termination . . . ." (J.A. 118.)

On June 27, 2013, the Richmond Circuit Court entered an order memorializing that "the termination grievance now be stayed pending this Court's ruling on the Petition." (J.A. 124.) On July 18, 2013, Wooten represented that the "administrative proceeding will be a dismissal grievance as set forth by § 2.5 of the Grievance Procedure Manual." (J.A. 130.)

On April 29, 2013, Wooten wrote to EDR to confirm the availability of the VGP during the pendency of her state action.  (J.A. 123.) On May 1 2013, EDR informed Wooten that while she "is not prevented from filing a grievance now, she may do so after the disposition of the recently filed action in the Richmond City Circuit Court." (J.A. 127.) Wooten chose to remain silent.

On September 17, 2013, the Richmond Circuit Court denied Wooten's Petition on the basis that she failed to "establish[] that [she] will suffer irreparable harm . . . ." (J.A. 475.) The Court specifically pointed to "[Va. Code §] 2.2-3006[, which] permits the petitioners to appeal the administrative hearings to Circuit Court, and . . . the Virginia Court of Appeals." (*Id*.) On October 21, 2013, the Richmond Circuit Court dismissed the Petition with prejudice. (J.A. 140.)

7

**C.    Wootten refuses to pursue the VGP process and instead attempts to grieve her termination under the LEOPGA.**

On October 25, 201, Wootten wrote to Holcomb submitting her first request for a hearing under the LEOPGA. (J.A. 171.) EDR was copied on this letter. (J.A. 177.) On October 29, 2013, Wootten was informed that "the Commissioner has determined that [Wootten] may not proceed as requested." (J.A. 178.) Wootten was told that she had previously "elected to proceed under the [VGP] . . . as the forum through which to challenge her employment termination." (*Id.*) Moreover, a law enforcement officer must, "within a reasonable amount of time following [the termination], as set by the agency, request a hearing." (*Id.*) DMV explained that a "period in excess of six months does not constitute a reasonable amount of time." (J.A. 178.) Wootten was reminded that the stay to file a grievance under the VGP had lifted. (*Id.*)

On November 4, 2013, Wootten repeated her request for a hearing under the LEOPGA. (J.A. 141.) This second request was denied, and Wootten was again reminded that "her actions and representations, including those taken and made by counsel, clearly indicated her intention to proceed under the [VGP]." (J.A. 142.) In response, Wootten insisted on a hearing under the LEOPGA, arguing that "Holcomb does not have the authority to deny [Wootten] a hearing pursuant to Virginia Code § 9.1-504." (J.A. 212.)

8

After Wootten's requests to proceed under the LEOPGA were rejected, EDR twice invited her to file her grievance under the VGP. (J.A. 143, 486.) On November 19, 2013, EDR informed Wootten that although the stay of the dismissal grievances would remain in place through the grievants' appeal from the October 21, 2013 Order, "[i]f the grievants nevertheless would like to proceed with their dismissal grievances, they are free to file them now, *which I would encourage* to hopefully resolve these issues more quickly." (J.A. 143 (emphasis added).) On December 3, 2013, EDR affirmed its "authority and jurisdiction" to keep the VGP available for Wootten to use, notwithstanding the extended delay. (J.A. 486.)

Despite EDR's invitation to file under the VGP, Wootten opted to pursue a lawsuit in Roanoke Circuit Court over DMV's decision regarding the LEOPGA. (J.A. 488-92.) DMV defended its refusal to provide an LEOPGA hearing because Virginia Code § 9.1-502(B) allowed DMV discretion to determine which procedure the grievant "proceeded under." (J.A. 500.) In other words, DMV argued that if stating the procedure to be used was sufficient to constitute an *election* of a particular grievance procedure for purposes of determining when the preclusion statute applied (i.e., the declaration was self-effecting), then Wootten's July 18, 2013 representation to the Richmond Circuit Court that she intended a "dismissal grievance as set forth by § 2.5 of the Grievance Procedure Manual" was the election. (J.A. 503-05.)

9

On April 11, 2014, the Virginia Supreme Court refused Wootten's Petition for Appeal from the dismissal of her Richmond Circuit Court action and upheld the October 21, 2013 dismissal order. (J.A. 144.) Wootten filed her Complaint in the Federal District Court on April 23, 2014, which included her claim that Appellants violated her procedural due process rights. At the time of filing, invitation of both EDR and Appellants for Wootten to file a grievance under the VGP remained an available means for Wootten to grieve her termination.

Although Wootten lost her initial challenge in Richmond Circuit Court, she persisted in her refusal to file the VGP grievance. (J.A. 508.) On May 6, 2014, EDR acknowledged Wootten's refusal to proceed under the VGP and stated that "[t]his would appear to conclude EDR's involvement in this matter." (J.A. 211.)

## SUMMARY OF ARGUMENT

First, the District Court erred in denying Appellants summary judgment on Wootten's Fourteenth Amendment procedural due process claim. Due process requires that post-termination administrative procedures be made available to a state employee. A state employer violates an employee's procedural due process rights when it interferes with those administrative procedures. Here, Appellants made no effort to interfere with Wootten's ability to pursue a post-termination hearing under the VGP. Quite the opposite: they repeatedly encouraged Wootten to pursue the VGP while informing her that her preferred procedure was not

10

available. The District Court adopted a restrictive view of what opportunities were available to Wootten under the VGP and ignored the undisputed fact that it was Wootten's own choices that stalled and ultimately prevented her from receiving constitutionally adequate process.

Second, the District Court erred in denying that Appellants were entitled to qualified immunity based on the court's novel interpretation of Virginia state law. Rather than acknowledging the undisputed facts—that Wootten had repeatedly been offered a chance to pursue a termination grievance under the VGP—the District Court accepted Wootten's legal argument that the VGP was foreclosed. Because no authoritative decision exists that interprets the two grievance procedures, Appellants reasonably believed that the VGP process was available for Wootten. Appellants could not have been on notice that Wootten's federal due process rights were violated when her request for a hearing under the LEOPGA was denied.

Finally, the District Court erred in affording all favorable inferences of the facts to Wootten when granting her summary judgment on her procedural due process claim. The District Court rejected Appellants' theory of the case by citing evidence Wootten had proffered. Yet the District Court applied that same evidence—which had been cast in favor of Wootten—to Wootten's theory of due process liability rather than view her theory through the lens of Appellants'

11

evidence. Appellants' evidence showing that EDR, the ultimate authority regarding compliance with the VGP, was unaffected in its stance that the VGP remained available to Wootten even after her election to use the LEOPGA, should have compelled the District Court to similarly deny Wootten summary judgment rather than find liability against Appellants.

## **STANDARD OF REVIEW**

This Court reviews claims of due process violations *de novo*. *See Nwolise v. INS*, 4 F.3d 306, 309 (4th Cir. 1993). First, the Court of Appeals considers the undisputed facts. *See Harris*, 550 U.S. at 378. Second, the employer may challenge the adequacy of the evidence to afford constitutional protection. *Mitchell*, 472 U.S. at 528 n.9. In addition, "a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citations omitted).

With respect to qualified immunity, "the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* This Court "review[s] de novo the denial of qualified immunity." *Brickey v. Hall*, 828 F.3d 298, 303 (4th Cir. 2016) (citing *Altman v. City of High Point*, 330 F.3d 194, 200 (4th Cir. 2003)).

## ARGUMENT

**I.    The District Court erred in holding that the VGP was not available to Wootten.**

The District Court focused solely on Wootten's October 25, 2013 request for an LEOPGA hearing as the time in which process was available. (J.A. 400.) The District Court held that because Appellants refused to hear Wootten's termination grievance under the LEOPGA after she elected that procedure, the VGP was foreclosed. (J.A. 401). But the District Court ignored the multiple opportunities Wootten had to pursue a hearing under the VGP both before and after October 25, 2013. Because Wootten ignored these chances, her due process claim fails.

**A.    Due process requires only that Wootten have an opportunity to challenge her termination.**

The Constitution assures that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend XIV. To prevail on a procedural due process claim, the plaintiff must establish "(1) a cognizable 'liberty' or 'property' interest; (2) the deprivation of that interest by 'some form of state action'; and (3) that the procedures employed were constitutionally inadequate." *Iota Xi Chapter of Sigma Chi Fraternity v. Patterson*, 566 F.3d 138, 146 (4th Cir. 2009) (quoting *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 172 (4th Cir. 1988)). "A state satisfies the Constitution's due process requirement in terminating an employee by providing notice of the proposed

13

deprivation and a pre-deprivation opportunity to respond." *Gray v. Laws*, 51 F.3d 426, 438 (4th Cir. 1995).

"In order to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate." *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000). A plaintiff cannot "cho[o]se not to pursue any of these avenues of relief in the state" and then "complain now that the state did not provide adequate procedures." *Tri-County Paving, Inc. v. Ashe Cty.*, 281 F.3d 430, 438 (4th Cir. 2002). A due process violation "is not complete unless and until the State fails to provide due process." *Zinermon v. Burch*, 494 U.S. 113, 126 (1990). Indeed, "a plaintiff may not bypass a seemingly adequate administrative process and then complain of that process's constitutional inadequacy in federal court." *Ashley v. NLRB*, 255 F. App'x 707, 709 (4th Cir. 2007). "Accordingly, where 'there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants.'" *Id.* at 710 (quoting *Alvin*, 227 F.3d at 116).

Focusing solely on Wootten's request to use the LEOPGA on October 25, 2013, the District Court expressed concerned that Appellants' construction of procedural due process "would lead to the untenable result that there can never be a due process violation in Virginia arising out of an officer's termination." (J.A.

14

404.) The District Court's concern was misplaced. Wootten had multiple opportunities to pursue a post-termination hearing prior to and after October 25, 2013. She simply declined to do so. (*See, e.g.*, J.A. 127, 143, 165, 486.)

### B. The District Court erred by failing to consider Wootten's multiple opportunities to use the VGP, with which Appellants did not interfere.

The District Court viewed Wootten's opportunity for process as a singular choice on October 25, 2013. But doing so was error because it ignored the many other opportunities Wootten had to pursue a post-termination hearing. Those forgone opportunities are fatal to her due process claim.

Wootten was terminated on April 5, 2013, but she did not file her petition in the City of Richmond Circuit Court seeking an injunction until April 17, 2013. In those interim twelve days, Wootten failed to elect the manner of grievance she would pursue to challenge her termination.[2] The District Court supplied no reason why Wootten's inaction was not an opportunity for due process.

As the District Court noted, EDR confirmed on May 1, 2013 that "Plaintiff could—but need not—have submitted her termination grievance to EDR during that time, if she wished to proceed under the VGP." (J.A. 396.) In other words,

---

[2] The District Court held that Wootten's March 13, 2013 selection of the VGP was meant to challenge her suspension. (J.A. 524.) According to the District Court, Wootten could not have selected to use the VGP to challenge her termination because Hill had not yet issued the April 5, 2013 Group III Written Notices that formally terminated Wootten's employment. (*Id.*)

15

EDR would have accepted Wootten's choice for a hearing under the VGP notwithstanding her desire to disqualify DMV's counsel of choice. (J.A. 127.) For an entire month between EDR's invitation and the Richmond Circuit Court's June 27, 2013 Order, Wootten stalled. Even with a stay of proceedings, Wootten's election would have resolved the issue of which statute would be invoked. Nothing required the grievance hearing to actually proceed during the pendency of the disqualification action.

After Wootten's state petition was dismissed on October 21, 2013, Wootten's opportunity to pursue a hearing under the VGP continued. DMV denied her a hearing under the LEOPGA but, with EDR concurrence, encouraged Wootten to pursue a hearing under the VPG as late as December 3, 2013. Wootten remained silent in the face of this opportunity. *See Hanton v. Gilbert,* 36 F.3d 4, 7-8 (4th Cir. 1994) (holding that a plaintiff who chooses "to remain silent in the face of such an opportunity" to "present her view of the matter" of the "recommendation to terminate her employment" "cannot now claim a denial of due process").

No constitutional requirement exists that a State must acquiesce to an employee's preferred hearing procedure where two different grievance options exist. The fact that "Virginia law affords grievants a choice between two constitutionally adequate alternatives," (J.A. 404), does not create a constitutional mandate that the employee gets her way. Wootten was given the opportunity to

16

choose again on November 19, 2013 and December 3, 2013, but again she balked. The VGP was available to Wooten for thirteen months between April 5, 2013 and May 5, 2014, yet she declined to take advantage of the process. Appellants encouraged Wooten to pursue a hearing under the VGP while the invitation from EDR remained open and Wooten's alternative option under the LEOPGA was removed, but Wooten made the decision to insist on the procedure of her choice. Wooten's choices do not implicate federal due process concerns.

## II.    It was not clearly established that refusing to give Wooten the process of her choice when an alternative process was offered would violate her procedural due process rights.

Because Wooten seeks to impose personal liability against the Appellants under 42 U.S.C. § 1983, the "doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Pearson*, 555 U.S. at 231). "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Id.* (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). Qualified immunity protects government officials when they act in legal "gray areas." *Brickey*, 828 F.3d at 303 (quoting *Smith v. Gilchrist*, 749 F.3d 302, 307 (4th Cir. 2014)).

17

The Court "do[es] not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. Al-Kidd*, 563 U.S. 731, 741 (2011). The Supreme Court explained in *Mullenix*:

> We have repeatedly told courts . . . not to define clearly established law at a high level of generality. The dispositive question is whether the violative nature of particular conduct is clearly established. This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition.

136 S. Ct. at 308 (quotations and citations omitted).

Courts inquire not simply whether the right purportedly violated was established "as a broad general proposition" but whether "it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001), as modified by *Pearson*, 555 U.S. 233. The Court must "identify a case where an [official] acting under similar circumstances as [the Defendants] was held to have violated" constitutional rights. *White v. Pauly*, 137 S. Ct. 548, 552 (2017). Otherwise, "[p]laintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987).

**A.    The District Court failed to identify the right at issue with the requisite level of specificity.**

The first step in the qualified immunity analysis is to identify the right at issue with the appropriate level of specificity. *See Wilson v. Layne*, 526 U.S. 603, 615 (1999). The Supreme Court has repeatedly admonished lower courts "not to define clearly established law at a high level of generality." *Al-Kidd*, 563 U.S. at 742. As noted throughout, the dispositive question is "whether the violative nature of *particular* conduct is clearly established." *Id.* (emphasis added). "This inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Mullenix*, 136 S. Ct. at 308 (citation omitted).

Where the relevant legal doctrine is fact-specific or relies on an examination of exigent circumstances, more specificity is required in defining the right at issue. *See id.* (recognizing that "specificity is especially important in the Fourth Amendment context, where . . . [i]t is sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts" (quotations and citation omitted)). Like the Fourth Amendment, due process requires this kind of specificity because "[d]ue process . . . .is a flexible concept that *varies with the particular situation*." *Zinermon*, 494 U.S. at 127 (emphasis added); *see also Anderson*, 483 U.S. at 639 (noting that "the right to due process of law is quite clearly established by the Due Process Clause, . . . if the

19

test of 'clearly established law' were to be applied at this level of generality, it would bear no relationship to . . . 'objective legal reasonableness'").

Here, the District Court defined the clearly established right by explaining that "due process requires that a terminated public employee be given a 'comprehensive post-termination hearing,' even if—as here—some pre-termination process existed." (J.A. 405) (quoting *Gilbert v. Homar*, 520 U.S. 924, 929 (1997)). Although that is correct, the court erred in focusing the inquiry on whether Wootten actually received a post-terminating hearing, as opposed to whether she was given an "*opportunity* to respond." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 547 (1985) (emphasis added). The opportunity to respond is all that U.S. Constitution requires.

The analysis for this case therefore centers on whether Wootten "bypass[ed] a seemingly adequate administrative process." *Ashley*, 255 F. App'x at 709-10 ("[W]here 'there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants.'" (citation omitted)). Properly defined, the relevant question is whether, at the time of Appellants' actions, it was beyond debate that these officials knew they would be violating Wootten's constitutional due process rights by denying her a hearing under the LEOPGA when they understood the VGP to be available and urged her to pursue her grievance under that process.

20

**B.    It was not clearly established that Wooten adequately availed herself of all available process when she refused to pursue a grievance hearing under the VGP.**

In denying the Appellants' claim of qualified immunity, the District Court held that their offer of a hearing under the VGP—which EDR had explicitly invited Wooten to file—was an "illusory" opportunity, and thus constitutionally infirm. The court reached that conclusion based on Wooten's attempt to use the LEOPGA. Interpreting Virginia law, the court concluded that Wooten was barred from the VGP process after electing to use LEOPGA, and that the Appellants were violating Virginia law in offering her the VGP process.

But that novel interpretation of Virginia law plainly was not clearly established when Wooten was offered the right to proceed under the VGP. Wooten was offered the opportunity to grieve her termination under the VGP, which Appellants reasonably believed was available to her absent a state-court decision holding otherwise. Qualified immunity therefore shields the Appellants from liability.

**1.    Reasonable officials in the Appellants' position would not have known that they would violate the U.S. Constitution by offering a post-termination hearing under one of two available state processes.**

Appellants believed that their actions complied with federal due process when they requested Wooten to accept EDR's invitation to pursue a VGP hearing

21

instead of acceding to Wootten's request for a grievance hearing under the LEOPGA. It is undisputed that EDR had received notice of Wootten's October 25, 2013 request to use the LEOPGA (J.A. 177), when EDR informed Wootten on November 19, 2013 and December 3, 2013, that she could nonetheless pursue a hearing under the VGP (J.A. 143, 486.)

At that point, Wootten had clear notice that Appellants would not grant her request for a LEOPGA hearing, but she was equally on notice that she could raise her grievance through the VGP process. On May 5, 2014, Wootten again refused to accept Appellants' decision, and instead told EDR that the agency lacked jurisdiction to conduct a hearing under the VGP. (J.A. 508.) Importantly, Wootten filed her federal lawsuit *prior* to receiving the May 6, 2014 letter from EDR that withdrew the VGP. Because Wootten simply chose not to avail herself of the proffered VGP process, the District Court plainly erred in denying the Appellants qualified immunity. Neither the District Court nor Wootten identified a case from the U.S. Supreme Court or this Court holding that Wootten had the due process right under the U.S. Constitution to refuse to proceed under one state statute in favor of another.

Cases from various circuits support Appellants' position that once the VGP hearing was presented as an option, Wootten was obligated to pursue that process in light of Appellants' refusal to allow a hearing under the LEOPGA. In *Alvin v.*

22

*Suzuki*, the Third Circuit rejected the plaintiff's argument that it would have been futile to have pursued the process made available to him. 227 F.3d at 118. The court explained that the state need only "provide[] *apparently* adequate procedural remedies," and that the plaintiff was obligated to "attempt[] to use" those procedures even if he thought the effort "would be useless." *Id.* at 116, 118 (emphasis added). The Court held that a plaintiff need not pursue a procedure only when "access to procedure is *absolutely* blocked" based on "concrete evidence." *Id.* And in *Krentz v. Robertson Fire Protection District*, the Eighth Circuit rejected the plaintiff's argument that he "was unaware that the . . . provisions [of the state procedure] applied to personnel actions taken by fire districts . . . ." 228 F.3d 897, 904 (8th Cir. 2000); *see also Bishop v. City of Suffolk*, No. 95-2000, 1996 U.S. App. LEXIS 13137, at *9 (4th Cir. May 29, 1996) (per curiam) (rejecting plaintiff's claim that he was denied due process when he "never attempted to avail himself of the available administrative grievance procedure for City of Suffolk employees").

    In the absence of U.S. Supreme Court or Fourth Circuit case law to the contrary, these decisions support Appellants' reasonable belief that Wootten was obligated to pursue her grievance under the VGP, as requested by Appellants and deemed available by EDR. No court has suggested that State officials violate the federal due process clause any time an individual refuses to pursue a proffered

23

grievance procedure because that individual concludes on their own that the procedure is not actually available to them. Wootten was required to use the VGP grievance process once it was offered to her before her due process rights could be implicated. Because Appellants reasonably understood that Wootten was required to do so, qualified immunity plainly applies.

### 2. The District Court's legal conclusion that the VGP was unavailable conflicts with the clearly established principle that federal due process is not defined by state law standards.

It is well settled that "[a]lleged violations of due process in the deprivation of a protectable interest are to be measured against a federal standard of what process is due and that standard is not defined by state-created procedures, even when those state-created procedures exceed the amount of process otherwise guaranteed by the Constitution." *Riccio v. Cty. of Fairfax*, 907 F.2d 1459, 1469 (4th Cir. 1990). "The Constitution's due process requirements are defined by the Constitution and do not vary from state to state on the happenstance of a particular state's procedural rules." *Gray*, 51 F.3d at 438. But while the court must "consult the entire panoply of . . . process provided by the state," *Fields v. Durham*, 909 F.2d 94, 97 (4th Cir. 1990), the extent to which a federal court may interpret state law to determine whether a particular process is available to a grievant has not been clearly established.

24

Although the District Court acknowledged that "whether Defendants violated state law in their handling of Plaintiff's termination grievance is not itself the *sine qua non* of Plaintiff's Due Process claim[,]" the Court nevertheless adopted a novel construction of two Virginia statutes to hold that Wootten's election to proceed under LEOPGA foreclosed, as a matter of law, her ability to proceed under the VGP. (J.A. 401.) The District Court ignored Wootten's actual opportunity to pursue a hearing under the VGP and instead focused on the Wootten's right to choose her preferred grievance procedure. While Wootten may have raised an issue of state procedural law related to the Appellants' compliance with the LEOPGA, (J.A. 488), any failure by the Appellants under state law in denying Wootten a LEOPGA hearing does not raise a federal due process claim.[3]

---

[3] When Wootten filed a petition in Roanoke Circuit Court to compel DMV and Holcomb to provide an LEOPGA hearing, Holcomb defended his decision to refuse the LEOPGA and provided the legal bases supporting his discretionary use of authority. DMV argued that the LEOPGA allows the "reasonable time" limit to be set by the agency, so DMV had discretion to determine that Wootten's request for a hearing under the LEOPGA was untimely and invalid. (J.A. 503.) Counsel also argued that the LEOPGA gave DMV the discretion to determine whether Wootten had "proceeded under" a "local governing body's grievance procedure" prior to making an election under the LEOPGA. (J.A. 504-05.) Using that authority, DMV reasonably determined that Wootten's June 18, 2013 representation to the Richmond Circuit Court that "the underlying administrative proceeding will be a dismissal grievance as set forth by § 2.5 of the [Manual]" and her multiple invocations of EDR's jurisdiction to determine her rights under the VGP constituted her desire to "proceed under" the VGP, which allowed the rejection of Wootten's later request for a LEOPGA hearing. Wootten dismissed the Roanoke Circuit Court lawsuit after filing her due process claim. (J.A. 686-87.)

25

Because a grievant's choice of procedure derives from state law and not federal due process, the District Court adjudicated these state-law principles to address Wootten's federal due process claim. (J.A. 403-04). In other words, the District Court's analysis in deciding that Appellants violated Wootten's due process rights relied upon an analysis of whether Appellants violated state law. *See Riccio*, 907 F.2d at 1469. Because no prior Court decision has held that a federal court may address a plaintiff's state-based legal argument for why she believed a process was unavailable, Appellants are protected by qualified immunity.

### 3. No Virginia case has held that election of one Virginia grievance statute automatically forecloses the availability of the other statute.

Even if the District Court properly analyzed the availability of process under state law, Appellants are still entitled to qualified immunity. Although the courts "do not require a case directly on point, . . . existing precedent must have placed the statutory or constitutional question beyond debate." *Al-Kidd*, 563 U.S. at 741. "Thus, 'in gray areas, where the law is unsettled or murky, qualified immunity affords protection to a government official who takes an action that is not clearly forbidden—even if the action is later deemed wrongful.'" *Gilchrist*, 749 F.3d at 307 (quoting *Occupy Columbia v. Haley*, 738 F.3d 107, 118 (4th Cir. 2013)). As the Supreme Court recently admonished, a Court "misunderst[ands] the 'clearly established' analysis" where it "fail[s] to identify a case where an [official] acting

26

under similar circumstances . . . was held to have violated the [constitutional right]." *Pauly*, 137 S. Ct. at 552.

The crux of the District Court's decision is that Wootten's election to proceed under LEOPGA foreclosed, as a matter of law, her ability to proceed under the VGP. But the District Court did not identify any sources of law to guide its analysis of the clearly established right because it believed that the VGP and LEOPGA are mutually exclusive. (J.A. 405-07.) However, the interplay between the VGP and LEOPGA cannot be resolved by a simple reading of the statutes.

No state-court authority exists to support the District Court's conclusion that the VGP was automatically rendered unavailable on October 25, 2013 when Wootten requested the LEOPGA hearing. Although a grievant cannot have a grievance hearing under both statutes, neither statute actually states *when* one process becomes unavailable or *what mechanism* is required for the preclusive provision to take effect. The District Court also ignored the impact of a valid refusal to provide an LEOPGA hearing. Because neither the Supreme Court of Virginia nor the Court of Appeals of Virginia has weighed in on these questions or the interplay between Virginia Code § 9.1-502(B) and § 2.2-3002(3), it was not clearly established that the VGP post-termination hearing was foreclosed to Wootten as a matter of Virginia law when Appellants denied Wootten an LEOPGA hearing and instructed her to continue to proceed under the VGP.

27

**III.    The District Court erred by viewing the evidence in the light most favorable to Wootten when granting Wootten's motion for summary judgment**

The District Court on January 7, 2016 decided cross-motions for summary judgment, on the issue of procedural due process in the termination of Wootten adversely to Holcomb and the other Appellants. (J.A. 388). Ruling on Appellants' Motion for Reconsideration, the District Court denied revisiting his decision on March 10, 2016. (J.A. 531). The District Court committed two distinct errors: 1) cross-motions for summary judgment must be decided separately, with consideration of all favorable inferences in the light most favorable to the employer on the employee's motion; and 2) the fact that the employer posited on its motion that the material facts were not in dispute, does not relieve the District Court of its obligation to review whether, when considering the employee's theory of the case, the material facts remain undisputed. The District Court simply adopted Wootten's theory of the case and afforded her all favorable inferences.

**A.    Legal framework for cross-motions for summary judgment.**

This Court has been straightforward in explaining the obligation of the District Court:

> When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law.  When considering each individual motion, the court must take care to resolve all

28

> factual disputes and any competing, rational inferences in the light most favorable to the party opposing that motion.

*Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quotations and citations omitted); *see Defenders of Wildlife v. N.C. DOT*, 762 F.3d 374, 392 (4th Cir. 2014); *Bacon v. City of Richmond*, 475 F.3d 633, 637-38 (4th Cir. 2007).

The non-movant is given the benefit of all favorable *legal theories* invoked by the evidence. *Charbonnages de France v. Smith*, 597 F.2d 406 (4th Cir. 1979). "[A]t the summary judgment stage, the facts are recounted in the light most favorable to [the non-movant] even where there are disputed events that [non-movant] may not ultimately be able to prove." *Walker v. Mod-U-Kraf Homes, LLC*, 775 F.3d 202, 205 n.1 (4th Cir. 2014). Summary judgment is not granted if there is any dispute over the reasonable inferences drawn from the undisputed facts in the record. *Morrison v. Nissan Motor Co.,* 601 F.2d 139 (4th Cir.1979).

Cross-motions for summary judgment do not establish the lack of a genuine dispute of material facts. *ITCO Corp. v. Michelin Tire Corp*., *Commercial Div*., 722 F.2d 42, 45 n.3 (4th Cir. 1983) ("The court is not permitted to resolve genuine issues of material fact on a motion for summary judgment—even where . . . both parties have filed cross motions for summary judgment."). The role of the court is to "rule on each party's motion on an individual and separate basis, determining, in each case, whether a judgment may be entered in accordance with the Rule 56

29

standard." *Towne Mgmt. Corp. v. Hartford Accident & Indem. Co.*, 627 F. Supp. 170, 172 (D. Md. 1985) (quoting Wright, Miller & Kane, *Federal Practice and Procedure*: Civil 2d § 2720). "[B]y the filing of a motion [for summary judgment] a party concedes that no issue of fact exists under the *theory he is advancing*, but he does not thereby so concede that no issues remain in the event his adversary's theory is adopted." *Nafco Oil & Gas, Inc. v. Appleman*, 380 F.2d 323, 325 (10th Cir. 1967) (emphasis added); *Haskins v. Baylis*, 440 F. Supp. 2d 455, 459 (D. Md. 2006). In *ITCO Corp.*, this Court explained:

> On appeal, Michelin advances the argument that the district court resolved this factual dispute, and opted for Michelin's version of the story. The contention mistakes the role of the court in ruling on a motion for summary judgment. The court is not permitted to resolve genuine issues of material fact on a motion for summary judgment -- even where, as below, both parties have filed cross motions for summary judgment. Where genuine issues of material fact are revealed, the duty of the court is to deny summary judgment and to permit the case to go to trial.

*ITCO Corp.*, 722 F.2d at 45 n.3. Thus,

> [t]he fact that both sides moved for summary judgment does not establish that there is no issue In order to grant a motion for summary judgment it must be shown "that there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). *Not merely must the historic facts be free of controversy but also there must be no controversy as to the inferences to be drawn from them.* It is often the case that although the basic facts are not in dispute, the parties   nevertheless disagree as to the inferences which may properly be drawn. Under such circumstances the case is not one to be decided on a motion for summary judgment.

30

*Amer. Fid. & Cas. Co. v. London & Edinburgh Ins. Co.*, 354 F.2d 214, 216 (4th Cir. 1965) (emphasis added). Cases presenting "difficult constitutional questions" may be "dependent on intensely factual determinations," and foreclose decision upon motion for summary judgment. *Columbia Union Coll. v. Clarke*, 159 F.3d 151, 168 (4th Cir. 1998).

### B.    Alternative Theories Advanced.

The District Court's central failing was not affording Appellants "all reasonable inferences in the light most favorable to the nonmoving party," before granting Wooten's Motion for Partial Summary Judgment. Before the District Court, in her cross-motion, Wooten advanced a theory that turned on the legal preclusion of an alternate remedy once she communicated to DMV, by writing on October 25, 2013, her desire for a hearing under LEOPGA.  Appellants, quite differently, submitted the theory of the case that the VGP was open to Wooten, continually, from when her employment was terminated until May 2014, she refused a due process hearing, and her refusal served to bar her constitutional complaint. Three elements supporting Defendants' theory emerged: 1) the apparent election by Wooten prior to October 25, 2013 to use the VGP; 2) the continued availability of the VGP for several months after that date; and 3) the untimeliness of her request for the LEOPGA hearing procedure. The parties also disagreed as to the meaning that might be afforded an "election" of a remedy for termination of

31

employment because the LEOPGA uses the word "proceed" when describing the circumstances in which the LEOPA is not available. Va. Code Ann. § 9.1-502(B).

### C.    District Court's application of the facts to Wootten's legal theory.

The District Court erred in accepting Wootten's legal theory that Appellants deprived her of the only available opportunity for due process and accepting facts and inferences favorable to Wootten to support that legal theory. Essentially, the District Court adopted Wootten's argument that October 25, 2013 was the only time in which Wootten had an opportunity to elect a procedure. With that cramped view, the District Court decided that Wootten's choice for the LEOPGA overrode any other considerations that occurred both prior to and subsequent to that choice. In doing so, the District Court ignored Appellants' evidence that Wootten chose the VGP on March 13, 2012 in her Allegation Letter in which she stated her desire to use the VGP, and on July 18, 2013 in her brief to the Richmond Circuit Court in which she represented that she would be pursuing a termination grievance under the VGP.

The District Court decided that an *election* of grievance termination remedy might be indefinitely deferred. On June 27, 2013, the Richmond Circuit ordered that "only those matters related to the termination grievance now be stayed pending this Court's ruling on the Petition." (J.A. 124.) This was viewed by the District Court as having "stayed *any* termination grievance proceeding." (J.A.

396). An alternative inference would be that the Richmond Circuit court stayed the termination grievance for only the VGP, because that was the precise grievance procedure Wootten represented that she would use. (J.A. 134-35.)

There is no constitutional requirement that a State offer two different grievance options to an employee in order to satisfy Constitutional due process. The *fact* that "Virginia law affords grievants a choice between two constitutionally adequate alternative," (J.A. 404), does not establish a constitutional *mandate* that the employee gets her way. This error is made apparent by the District Court's holding that EDR's May 6, 2014 letter withdrawing the VGP had binding effect, but the November 19, 2013 letter extending the VGP to Wootten was void. (J.A. 524-25.) A federal court must distinguish between the remedies afforded and the remedies mandated by the Fourteenth Amendment. In the failure to afford Appellants the benefit of an *interpretation* of events prompted by *rational inferences*, the District Court erred.

Wootten's theory of the case, and the theory adopted by the District Court, is that Appellants deprived Wootten of an opportunity—her *only* available opportunity—for a grievance hearing by denial of her LEOPGA request on October 25, 2013. Appellants did not actually deprive Wootten of anything when the VGP remained available to her. At a minimum, the District Court erred in resolving factual disputes about this issue against Appellants.

33

## **CONCLUSION**

For the reasons stated, Appellants did not deny Wootten post-termination due process when an alternate procedure was available to her, Appellants are protected by qualified immunity with respect to this Due Process claim, and the District Court erroneous applied the wrong standard of review when it granted Wootten summary judgment.

Respectfully submitted,

RICHARD HOLCOMB, JOSEPH HILL,
and JEANNIE THORPE

By: /s/ Ryan Spreague Hardy
Ryan Spreague Hardy, VSB # 78558
Assistant Attorney General
Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
Phone: (804) 786-0969
Fax: (804) 371-2087
RHardy@oag.state.va.us

Counsel for Appellants

## **STATEMENT REGARDING ORAL ARGUMENT**

Pursuant to Local Rule 34(a), Appellants request that the Court hear oral argument in this matter, which they submit will aid in the decisional process.

34

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this brief complies with the requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in 14-point Times New Roman, a proportionally spaced font, and that it complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), because it contains 7,660  words, excluding the parts exempted by Rule 32(f), according to the count of Microsoft Word.

/s/
_____
Ryan Spreague Hardy

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 8, 2017, I electronically filed the foregoing brief with the Clerk of this Court by using the appellate CM/ECF system. The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

/s/
_____
Ryan Spreague Hardy

35